**WO** SVK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Lee Jennings, | No. CV 10-8004-PCT-JAT (JRI) |
| Plaintiff, | **ORDER** |
| vs. | |
| Unknown Hays, et al., | |
| Defendants. | |

Plaintiff Robert Lee Jennings, who is confined at the Arizona State Prison Complex-Morey in Buckeye, Arizona, filed this civil rights action against various officials of the Arizona Department of Corrections (ADC). (Doc. 1.) The remaining Defendants—Sergeant Michael Hays and Correctional Officer (CO) II Timothy Heavrin—move for summary judgment on the only remaining Count.[1] (Doc. 51.) The motion is ready for ruling. (Docs. 61, 65.)

The Court will grant the motion and terminate the case.

**I. Background**

In Count II of his Complaint, Plaintiff alleged that Hays and Heavrin entered Plaintiff's cell to confiscate three humorous poems that Plaintiff had posted on his bulletin board. Plaintiff protested because he believed he was allowed to have the poems, and he

---

[1] The Court sent Plaintiff a Notice pursuant to Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998), advising him of his obligation to respond. (Doc. 55.)

requested that a lieutenant be called.  Hays and Heavrin then used mace "maliciously and sadistically to harm . . . Plaintiff."  (Doc. 1.)  Plaintiff also claims that there was no penological purpose for Defendants to use mace.  (Id.)

The Court directed Hays and Heavrin to answer Count II.  (Doc. 5.)  The Court dismissed Counts I and III and the remaining Defendant.

Defendants move for summary judgment on the grounds that (1) Defendants did not use excessive force; rather, minimal force was used in a good faith effort to restore or maintain discipline, and (2) Defendants are entitled to qualified immunity.  (Doc. 51.)

## II.   Legal Standards

### 1.   Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995).  Rule 56(c) provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  An issue of fact must be genuine.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  The opposing party need not establish a

1 material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute 2 be shown to require a jury or judge to resolve the parties' differing versions of the truth at 3 trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

4 When considering a summary judgment motion, the court examines the pleadings, 5 depositions, answers to interrogatories, and admissions on file, together with the affidavits 6 or declarations, if any. See Fed. R. Civ. P. 56(c). At summary judgment, the judge's 7 function is not to weigh the evidence and determine the truth but to determine whether there 8 is a genuine issue for trial. Anderson, 477 U.S. at 249. The evidence of the non-movant is 9 "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. But, 10 if the evidence of the non-moving party is merely colorable or is not significantly probative, 11 summary judgment may be granted. Id. at 248-49.

12 **2.    Excessive Force**

13 Whenever a prison official is accused of using excessive force in violation of the cruel 14 and unusual punishment clause of the Eighth Amendment, liability turns on whether force 15 was applied in a good-faith effort to maintain or restore discipline or maliciously and 16 sadistically for the purpose of causing harm. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) 17 (citing Whitley v. Albers, 475 U.S. 312, 320-32 (1986)); see also Martinez v. Stanford, 323 18 F.3d 1178, 1184 (9th Cir. 2003). A showing of deliberate indifference is not enough. 19 Whitley, 475 U.S. at 320. In determining whether the use of force was wanton and 20 unnecessary, the Court must consider the following factors: (1) the extent of injury suffered 21 by the inmate; (2) the need for application of force; (3) the relationship between that need 22 and the amount of force used; (4) the threat reasonably perceived by the responsible official; 23 and (5) any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 24 7.

25 **III.   Motion for Summary Judgment**
26     **A.    Parties' Contentions**
27         **1.    Defendants**

28 In support of their motion, Defendants submit their Statement of Facts (Doc. 52

1  (DSOF)); their declarations, with attachments (id. Ex. A, Hays Decl.; Ex. B, Heavrin Decl.);
2  result of Disciplinary Hearing (id., Ex. C); and SOAP medical notes (id., Ex. D).

3  On May 2, 2009, at approximately 8:31 a.m. Hays and Heavrin entered Plaintiff's cell
4  to remove an unauthorized picture—a cartoon[2]—from a bulletin board in his cell.  Plaintiff
5  was present. (Doc. 52, DSOF ¶ 2.) According to Defendants, Hays stated that he would be
6  removing the cartoon from Plaintiff's bulletin board, and Plaintiff stated that he was not
7  going to allow it. (Id. ¶ 3.)

8  As Hays began to remove the unauthorized picture, Plaintiff grabbed Hays' right
9  wrist and attempted to force Hays' right hand behind his back. (Id. ¶ 4.) Defendants assert
10 that Correctional Officers are trained to neutralize an inmate's assault by using a use-of-force
11 continuum, starting with the least amount of force and proceeding to use more force if
12 necessary. (Id. ¶ 5.) The use of oleoresin capsicum or pepper spray is the first method on
13 the use-of-force continuum used to respond to a physical assault and is the least amount of
14 force available. (Id. ¶ 6.)

15 Hays grabbed his pepper spray with his left hand and applied one short burst to
16 Plaintiff's face in self-defense to force him to release his grip on Hays. (Id. ¶ 6.) Plaintiff
17 began to back off but then started to come at Hays again. (Id. ¶ 7.) Hays ordered Plaintiff
18 to prepare to be handcuffed; Plaintiff refused. (Id. ¶ 8.) Hays grabbed Plaintiff's left hand
19 and tried to restrain him with handcuffs, but because Plaintiff had OC spray on his hands and
20 arms, Hays was unable to maintain a secure grip and successfully apply the handcuffs. (Id.)

21 Hays gave a second order to Plaintiff to "cuff up" (kneel down and place his hands
22 behind his back to be handcuffed). (Id. ¶ 9.) Plaintiff again refused to cuff up and, instead,
23 attempted to strike Hays with his fists and grabbed Hays' left hand. (Id.)  Heavrin then
24 applied a single short burst of OC spray directed at Plaintiff's face. (Id. ¶ 10.) Plaintiff
25 released his grip on Hays' hand, went to the sink in his cell, and began to wash his face. (Id.)
26 Plaintiff continued to refuse to prepare to be handcuffed, so Hays and Heavrin exited
27
28

---

[2]Plaintiff refers to this item as a humorous poem.

- 4 -

1  the cell and closed the cell door, leaving Plaintiff in the locked cell. (Id. ¶ 11.)

2  By that time, other officers had arrived and ordered Plaintiff to get on his knees and
3  put his hands behind his back to prepare to be handcuffed. (Id. ¶ 12.) He complied, and
4  officers entered the cell, applied restraints, and escorted Plaintiff to medical for
5  decontamination because of the pepper spray. (Id.) Plaintiff declined to irrigate his eyes and
6  refused any type of medical care. (Id. ¶ 16.) Medical staff noted that there appeared to be
7  no stress to Plaintiff's lungs, he was talking clearly and in full sentences, and he had no facial
8  or torso injuries. (Doc. 51 at   Ex. D, Medical SOAP Notes, dated May 2, 2009.)

9  Plaintiff injured Hays' right shoulder; Hays completed an ADC Report of Industrial
10 Injury on the same day as this incident. (PSOF ¶ 14.) A disciplinary hearing was held on
11 this matter, and Plaintiff was found guilty of assaulting Hays. (Id. ¶ 15, Ex. C, Result of
12 Disciplinary Hearing.)

### 2.   **Plaintiff**

14 In opposition, Plaintiff submits his Response (Doc. 61); his Statement of Facts (Doc.
15 62 (PSOF)), and numerous exhibits.[3]

16 Plaintiff asserts that he has been incarcerated at 17 different ADC facilities and moved
17 to Winslow Kaibab in 2006. (Doc. 62, PSOF ¶ 1.) The rooms have bulletin boards and
18 Plaintiff immediately tacked 3 humorous poems to the board. (Id. ¶ 2.) He was in Kaibab
19 over 2 1/2 years and was subject to over 800 cell searches. (Id. ¶ 4.) About 3 months before
20 May 2, 2009, Heavrin had completed 15 to 20 cell inspections. (Id. ¶ 5.) Plaintiff had
21 worked in the prison law library and had copied different ADC policies for himself. (Id. ¶
22 6-7.)

23 On April 28, Heavrin stopped Plaintiff and told him to remove the poems from his
24 bulletin board; Plaintiff refused, stating that they violated no policy. (Id. ¶ 8.) Heavrin said
25 that the next time he was in the building, he would remove them. (Id. ¶ 9.) Warden Garcia
26 went to Plaintiff's room that same day and Plaintiff asked him about the poems; Plaintiff was

---

28  [3]Plaintiff's Response (Doc. 61) and PSOF (Doc. 62) are largely the same and PSOF includes a discussion of legal authority. Therefore, the Court's references are to Doc. 62.

1 assured that there was nothing wrong with them. (Id. ¶¶ 10-12.)

2 On May 2, as Plaintiff returned from breakfast, Heavrin told Plaintiff to return to the
3 administration building because someone wanted to see him; Plaintiff refused because of his
4 inhaler and medical condition, and he went to his room. (Id. ¶¶ 15-16.)

5 Within a few minutes, the door opened, and Hays and Heavrin walked in; Hays stated
6 they were there to confiscate the poems. (Id. ¶ 17.) Plaintiff got up from his desk and said
7 that Garcia had told him there was no problem with the poems; Plaintiff asked to see a
8 lieutenant to resolve the matter. (Id. ¶¶ 18-19.) Hays said that no lieutenant was needed.
9 (Id. ¶ 19.) Plaintiff asked for a lieutenant over and over "having watched [Hays']
10 interactions with black prisoners at the dining hall. . . ." (Id. ¶ 20.) Hays stated that he was
11 going to confiscate the poems and that Plaintiff should not touch him. (Id. ¶ 21.) As Hays
12 reached toward the board, Plaintiff put his hand up and their hands touched. (Id. ¶ 22.)

13 Hays yelled for Plaintiff to leave the room, and Plaintiff again asked for a lieutenant,
14 at which point Hays used his mace. (Id. ¶ 23.) Heavrin then sprayed another blast of
15 chemicals. (Id. ¶ 24.)

16 Plaintiff went immediately to the sink, gasping for air. Plaintiff asserts that he suffers
17 from asthma and chronic obstructive pulmonary disease. (Id. ¶ 25.) Plaintiff ran cold water
18 on his face and eyes; Hays took the opportunity to grab Plaintiff's left arm to put it behind
19 Plaintiff's back but "due to chemical and water on the Plaintiff's hands—allowed Plaintiff
20 to easily slip from his grip to continue with the cold water." (Id. ¶ 26.)

21 At this point , Hays and Heavrin left the room and called for back up. (Id. ¶ 27.)

22 Plaintiff's asserts that the poems were in compliance with prison rules. (Id. at 7.)
23 Plaintiff weighed 130 pounds, is 5' 10", was 67 years old, has a disability, and is a "frail and
24 skinny man." (Id.) Plaintiff alleges that Hays weighed 190 pounds, is 6' 1", and 44 years
25 old. (Id. at 8.) Plaintiff argues that Defendants' story is illogical because Plaintiff had neither
26 the strength nor prison record to support Defendants' claims that Plaintiff assaulted Hays.
27 (Id. at 8, 9, 11.)

28 Plaintiff contends that prior to the situation escalating to the use of pepper spray, Hays

- 6 -

1 and Heavrin violated prison protocol when they refused to summon a higher authority after
2 Plaintiff's numerous requests. Hays had a duty to contact a lieutenant to come to the cell and
3 resolve the matter, but he refused. (Id. at 10, Ex. 7.)

4 Plaintiff argues that Defendants' statements in their reports are different than the
5 responses to interrogatories, specifically denying that Plaintiff had requested to see a
6 lieutenant but then saying that he had. (Id. at 10-11, Ex. 8, Ex. 9.)

7 Plaintiff argues that there is a record supporting his claim that Hays was a known
8 racist who was transferred to another unit due to his overly aggressive, confrontational
9 attitude toward black inmates. (Id. at 12, 14.) In his haste, Hays only saw an older black
10 man who Hays felt he could intimidate and scare by commanding Plaintiff to leave the room.
11 But Plaintiff responded by requesting a lieutenant, which angered Hays. (Id. at 12.) Hays
12 refused and had no intention to adhere to procedures. (Id.)

13 Plaintiff asserts that prison protocol is that if a prisoner resists an officer's reasonable
14 order, additional officers should be called to control the prisoner, even when the order is
15 based on a prison rule that is later found to be unconstitutional. (Id.) Hays prevented
16 Plaintiff from removing the chemicals from his face. (Id. at 14.)

### 3. Reply

18 Defendants argue that Plaintiff concedes that he attempted to physically stop Hays
19 from removing the prohibited cartoon and slipped his arm away when Hays attempted to
20 handcuff Plaintiff after the pepper spray was used. (Doc. 65 at 1.) Plaintiff also admits that
21 Hays told Plaintiff that he was there to take the poem and warned Plaintiff not to touch him.
22 (Id. at 1-2.) He concedes that Hays told him to immediately leave the room cell after
23 Plaintiff tried to prevent the cartoon from being removed and before any pepper spray was
24 used. (Id. at 2.) Defendants argue that there is no material factual dispute that, after being
25 warned, Plaintiff physically attempted to prevent his cartoon from being removed and
26 resisted being handcuffed. (Id.)

27 Defendants contend that age, size differentials, and Plaintiff's medical condition are
28 irrelevant because Plaintiff admits that he resisted Hays taking down his cartoon. (Id.) They

- 7 -

1 assert that the racism allegations are without any foundation or support and nothing but pure
2 speculation. (Id.)

3 Defendants argue that the Ninth Circuit has held that the use of pepper spray may be
4 reasonable as a general policy to bring an arrestee or inmate under control. (Id. at 2-3.)
5 Plaintiff was upset that his cartoon was about to be removed and physically tried to prevent
6 that. (Id. at 3.) He refused to comply with orders not to touch the officer and to leave the
7 area. A small amount of pepper spray was used to resolve this situation and maintain or
8 restore discipline. (Id.)

9 As to qualified immunity, Defendants argue that Plaintiff has not established that there
10 was clear precedent in the Ninth Circuit about the use of pepper spray to enforce prison
11 discipline or to enforce a disobeyed order. (Id., citing Howard v. Nunley, 2010 WL 3785536
12 at *3 (D. Ariz., Sept. 24, 2010) (collecting cases and granting qualified immunity).) They
13 assert that the only clear Ninth Circuit law appears to be that the use of pepper spray may be
14 reasonable as a general policy to bring an arrestee under control but not when an arrestee
15 surrenders and is rendered helpless. (Id., citing LaLonde v. County of Riverside, 204 F.3d
16 947, 961 (9th Cir. 2000).) Pepper spray was not used here after Plaintiff was under control.

**B.     Analysis**

**1.     No Constitutional Violation**

19 Applying the Hudson factors, the Court finds that there is no genuine dispute of fact
20 that the force used was applied in a good faith effort to restore order and not maliciously or
21 sadistically to cause harm. See Hudson, 503 U.S. at 7.

**a.     Extent of Injury**

23 The extent of a prisoner's injury may suggest whether the use of force could plausibly
24 have been thought necessary in a particular situation. Hudson, 503 U.S. at 7. Although the
25 extent of a prisoner's injury is relevant in the use of force determination, it is not decisive
26 because a prisoner can state a claim even if he did not suffer a significant injury. See id. at
27 4; Wilkins v. Gaddy, 130 S. Ct. 1175 (2010); Schwenk v. Hartford, 204 F. 3d 1187, 1196
28 (9th Cir. 2000) (the attack need not result in permanent injury). "Otherwise, the Eighth

- 8 -

1  Amendment would permit any physical punishment, no matter how diabolic or inhuman,
2  inflicting less than some arbitrary quantity of injury." Hudson, 503 U.S. at 9. But not every
3  "malevolent touch by a prison guard" or every push or shove, gives rise to a federal cause
4  of action. Id. at 9.

5  Based on Plaintiff's assertions that he was briefly unable to breathe, the Court finds
6  that there is some evidence of injury, although there is no evidence of lasting injury. Because
7  the injury was minor, the first factor weighs slightly in Plaintiff's favor. See Hudson, 503
8  U.S. at 10.

### b. Need for Force

10  The Ninth Circuit has held that "the force that was applied must be balanced against
11  the need for that force: it is the need for force which is at the heart of the [excessive force
12  determination]." Alexander v. City and County of San Francisco, 29 F.3d 1355, 1367 (9th
13  Cir. 1994). Where there is no need for force, any force used is objectively unreasonable for
14  constitutional purposes. See P.B. v. Koch, 96 F.3d 1298, 1303-04 & n.4 (9th Cir. 1996).

15  There are some disputes of fact in the versions of events related by the parties;
16  specifically, they dispute the exact sequence of some events and whether Plaintiff attempted
17  to twist Hays' arm behind his back. Viewing the facts in the light most favorable to Plaintiff,
18  Plaintiff concedes that after Hays and Heavrin entered Plaintiff's cell,

- Plaintiff was told by Hays that Hays would remove the poems;
- Plaintiff insisted on seeing a lieutenant to resolve the dispute;
- Hays said that no lieutenant was needed;
- Hays again told Plaintiff that Hays would confiscate the poems and that Plaintiff should not touch him;
- Hays reached to remove the poems, and Plaintiff put his hand up to block Hays;
- their hands touched;
- Hays ordered Plaintiff to leave the room;
- Plaintiff did not comply and again asked for a lieutenant;
- Hays pepper sprayed Plaintiff and then Heavrin sprayed Plaintiff.

25  The Ninth Circuit has ruled that the "use of [tear gas] in small amounts may be a
26  necessary prison technique if a prisoner refuses after adequate warning to move from a cell
27  or upon other provocation presenting a reasonable possibility that slight force will be
28  required." Spain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979). The court reasoned that

- 9 -

1  in such circumstances, the substance may be a legitimate means to prevent small disturbances
2  from becoming dangerous to other inmates or the prison personnel. (Id.)  In Clement v.
3  Gomez, the court found no Eighth Amendment violation where a small amount of pepper
4  spray was used to quell fighting in a cell, even though the spray effected bystander inmates.
5  298 F.3d 898, 903-04 (9th Cir. 2002).  And the use of a chemical agent has been upheld
6  "when reasonably necessary to . . . subdue recalcitrant prisoners. . . ."  Soto v. Dickie, 744
7  F.2d 1260, 1270 (7th Cir. 1984); Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996)
8  (mace can be used in small quantities to control a recalcitrant inmate); see also Howard, 2010
9  WL 3785536, at *4 (citing Soto and Spain but not reaching the constitutional question
10 because the court found defendants were entitled to qualified immunity.)  In sum, that
11 Defendants were not dealing with a prison riot does not mean that force could not be used.

12 　　　　Moreover, the Court rejects Plaintiff's interpretation of prison procedures for dealing
13 with a recalcitrant inmate who refuses to obey an order.  Nothing in the description of ADC
14 procedures offered by Plaintiff permits Plaintiff to refuse to obey orders or to interfere with
15 an officer's performance of his duties unless and until a higher authority is brought in to
16 resolve a dispute, and nothing forbids the use of force until a higher authority is present.
17 (See Doc. 62, Ex. 7.)  Also, it is irrelevant that Plaintiff believed the poems in question to be
18 permissible under ADC policy; Plaintiff's opinion does not justify a refusal to obey Hays'
19 orders or an attempt to block him from performing his job.  The only issue is whether
20 Plaintiff offers evidence that the use of the pepper spray was malicious and sadistic.

21 　　　　Here, Plaintiff's conduct—repeated refusal to permit Hays to remove the poems by
22 insisting on bringing in a higher authority to resolve the dispute, by physically blocking Hays
23 and touching him, and by refusing to leave the cell when ordered to do so—qualified Plaintiff
24 as a recalcitrant inmate.  See Howard, 2010 WL 3785536, at *4.  According to Plaintiff, that
25 is when Hays sprayed him.  And Heavrin attests that after he used his radio to obtain back
26 up and Hays sprayed Plaintiff, Plaintiff initially backed off but then came at Hays again.
27 (Doc. 52, Ex. B, Heavrin Decl. ¶¶ 7-8.)  It was then that Heavrin applied a short burst of
28 pepper spray.  (Id. ¶ 8.)  Although Plaintiff denies assaulting Hays, he admits blocking him

1  and does not deny moving toward Hays after being sprayed.

2  Thus, the incident was precipitated by Plaintiff's recalcitrance. There is a legitimate
3  penological interest in maintaining prison security in general and in protecting staff in
4  particular. In addition,"[w]hether in the context of a prison-wide disturbance or an individual
5  confrontation between an officer and prisoner, corrections officers often must act
6  immediately and emphatically to defuse a potentially explosive situation," and they must
7  make decisions in haste and under pressure. Jordan v. Gardner, 986 F. 2d 1521, 1528 (9th
8  Cir. 1993). Therefore, prison officials are accorded great deference to execute measures when
9  needed to maintain internal order and security. Whitely, 475 U.S. at 320-21; Bell v. Wolfish,
10  441 U.S. 520, 547 (1979).

11  Given the close proximity of Plaintiff and Defendants together in a cell, Hays' order
12  not to touch him, the physical blocking by Plaintiff and resultant physical contact, and
13  Plaintiff's refusal to leave the cell when ordered to do so, the efforts to restrain Plaintiff were
14  appropriate to maintain security and order and were not the wanton infliction of pain.

15  This factor weighs in Defendants' favor.

### c. Relationship between Need for Force and Force Used

17  Regardless of the disruption, corrections officers must balance the need to "maintain
18  or restore discipline" through force against the risk of injury to an inmate. Hudson, 503 U.S.
19  at 6. In analyzing the relationship between the need for force and the force used, a simple
20  overreaction by an officer is not enough to establish an Eighth Amendment violation. Under
21  the Eighth Amendment, the standard is malicious and sadistic force, not merely objectively
22  unreasonable force, which is applicable under the Fourth Amendment. Clement v. Gomez,
23  298 F.3d 898, 903 (9th Cir. 2002); see Hudson, 503 U.S. at 9 (not every malevolent touch
24  gives rise to an Eighth Amendment claim). The infliction of pain in the course of a prison
25  security measure is not cruel and unusual punishment "simply because it may appear in
26  retrospect that the degree of force authorized or applied for security purposes was
27  unreasonable, and hence unnecessary in the strict sense." Whitely, 475 U.S. at 319. In other
28  words, even if pepper spray was not reasonably necessary to subdue Plaintiff, it does not

amount to cruel and unusual punishment unless the pain was inflicted "maliciously and sadistically for the very purpose of causing harm." See id.

Because Defendants have established that it was not wanton infliction of pain to pepper spray an inmate for refusing repeated orders not to interfere and to leave the cell, Plaintiff's burden—to show that the actual acts to restrain him constituted the wanton and unnecessary infliction of pain—is extremely high. See Whitley, 475 U.S. at 325 (once it was established that an order to shoot low was not wanton, prisoner's burden to show the actual shooting was wanton and unnecessary is extremely high). Plaintiff fails to meet this burden. The Court has already rejected Plaintiff's claims that Defendants failed to follow procedures by refusing to call in a higher authority to resolve the dispute. Plaintiff argues that Hays was a known racist, but Plaintiff provides no evidence of this. Plaintiff's conclusory allegations are insufficient. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). And Plaintiff provides no evidence of a racial animus, such as offensive name-calling, during the incident. Plaintiff offers no argument at all as to Heavrin.

This factor weighs in Defendants' favor.

### d. Threat Perceived

"[T]he extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them" is also relevant. Whitely, 475 U.S. at 321. The Court cautioned that with the ever-present potential for violence, "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators." Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 349 n.14 (1981)).

As noted, Plaintiff concedes that he tried to blocked Hays' from removing the poems, touched Hays' hand, refused an order to leave the cell, and continued to insist on a higher authority. That Plaintiff was smaller than Defendants is not dispositive; he had already had physical contact with Hays, interfered, and refused a direct order to leave. Defendants were not required to continue to repeat orders or risk further escalation. For the reasons discussed above, Plaintiff's allegations are insufficient to rebut Defendants' claims regarding the perceived threat. This factor weighs in Defendants' favor.

### e. Efforts to Temper Force

The only force used here by Defendants was the pepper spray and attempt to place Plaintiff in hand cuffs. Defendants had already warned Plaintiff not to interfere and then ordered him to leave the cell but he refused to comply. Defendants offer undisputed evidence that they are trained to use pepper spray as the least amount of force to respond to a physical assault. The Court finds that there was no lesser use of force available. See Williams, 77 F. 3d at 763 (because a limited use of mace is a relatively "mild" response compared to other forms of force, the application of mace indicates a "tempered" response by the prison officials.) This final factor weighs in favor of Defendants.

### f. Conclusion

In sum, four of the five Hudson factors weigh in favor of Defendants. The evidence, viewed in the light most favorable to Plaintiff, demonstrates that Plaintiff attempted to interfere with Defendants' performance of their duties, physically blocked Hays from removing the contraband, touched Hays, and refused to leave the cell when ordered to do so. Defendants responded with two bursts of pepper spray, and Plaintiff suffered minor and temporary injuries. The evidence does not support a reliable inference that Defendants acted maliciously and sadistically for the very purpose of causing Plaintiff harm. The Court will grant summary judgment on the claim of excessive force.

### 2. Defendants Are Entitled to Qualified Immunity

A defendant in a § 1983 action is entitled to qualified immunity from damages for civil liability if his or her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The qualified-immunity inquiry asks if the constitutional right was clearly established at the relevant time. Saucier v. Katz, 533 U.S. 194, 201-02 (2001). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. at 201. "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*." Id. at 202 (emphasis added).

A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Kennedy v. City of Ridgefield, 439 F.3d 1055, 1065 (9th Cir. 2006) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). It is not necessary that there be a prior case with the identical facts showing that a right is clearly established; it is enough that there is preexisting law that provides a defendant "fair warning" that his conduct was unlawful. Kennedy, 439 F.3d at 1065.

The Court finds that Defendants are entitled to qualified immunity because they violated no clearly established right. The law is unclear regarding the parameters of the permissible use of pepper spray to address inmates who disobey orders or interfere with officers in the performance of their duties. In 1979, the court ins Spain stated that tear gas in small amounts might be appropriately used to subdue provocative inmates. 600 F. 3d at 195. In Stewart v. Stewart, a district court held that an inmate failed to state an Eighth Amendment claim where he alleged that officials had a policy of spraying prisoners with pepper spray for refusing to follow directions. 60 Fed. Appx. 20, 22 (9th Cir. 2003). The court reasoned that such a policy "falls within the wide-ranging zone of deference accorded to prison officials in shaping 'prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline.'" Id., citing Whitley, 475 U.S. at 322.

In sum, even if Defendants' conduct violated the Eighth Amendment, that would not have been clear to a reasonable officer in the situation confronted, and they are entitled to qualified immunity on claims for damages.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 51).

(2) Defendants' Motion for Summary Judgment (Doc. 51) is **granted**, and the **claim is dismissed with prejudice**.

///

///

///

- 14 -

(3) The action is terminated, and the Clerk of Court must enter judgment accordingly.

DATED this 19th day of April, 2011.

James A. Teilborg
United States District Judge